Carl P. FLEENER, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 41S01–9510–CR–1243.

Supreme Court of Indiana.

Oct. 31, 1995.

Richard L. Tandy, Greenwood, for appellant.

Pamela Carter, Attorney General, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for appellee.

ON PETITION TO TRANSFER

DICKSON, Justice.

The defendant-appellant, Carl P. Fleener, was convicted on three counts of child molesting, a class D felony. The Court of Appeals affirmed. *Fleener v. State* (1995), Ind. App., 648 N.E.2d 652. The defendant seeks transfer, in part asserting trial court error in admitting expert testimony regarding child sexual abuse syndrome.

This was the principal issue addressed in our recent decision, *Steward v. State* (1995), Ind., 652 N.E.2d 490, an opinion not yet filed when the Court of Appeals decided the present case. In discussing the defendant's Evidence Rule 702 issue, the Court of Appeals focused upon the trial court's discretion to determine whether the witness possessed sufficient expertise rather than upon whether there had been an adequate foundational showing of reliability. *Fleener*, 648 N.E.2d

at 657. We grant transfer to consider the applicability of *Steward* to this cause.

At trial, the prosecution called Susan Watson, a psychotherapist who had counseled the child complainant, T.S. Her testimony naming "common behavior characteristics" shared by sexually abused children and identifying which of these characteristics were evident in the alleged child victim was offered as affirmative proof of abuse during the prosecution's case in chief, rather than to rebut any attack on the child's credibility.

The direct examination of Watson included the following:

Q. ... Miss Watson, are you familiar with the common behavior characteristics shared by children who have been sexually abused?

A. Yes I am.

Q. What are some of those characteristics?

A. I would preface the listing by saying not all children show all of these symptoms, but children do show a majority of these symptoms, and so it's like a check list.

Record at 395–96. At this point, no objection had been made. Watson then proceeded to describe three such characteristics (change in sleep patterns; change in affection patterns—either being "real clingy" or not wanting to be touched; and "increased expression of aggressiveness or quarrelling, rebelling and defiance, anger") before being interrupted by defense counsel's objection. Defense counsel objected, explaining, "[M]y point is that under [Indiana Evidence Rule] 702(b) I think there must be a finding by the Court, and under 703 I believe that there must be a foundation that would indicate some indication of reliability...." Record at 397–98. The objection was overruled, and the witness continued to testify, reiterating, "Again as we were saying, sleep patterns, affection patterns, anger patterns." Record at 398–99. She then went on to list a number of other "characteristics": change in relational patterns or detachment, sexual play, increased level of self-touch, shortened attention span or difficulty concentrating, stomach problems, difficulty trusting people, and fear of a shortened future or that "someone's gonna get me." Record at 399. Watson stated that

"most children who have been verified as sexual abuse victims exhibit a majority of that list." *Id.* Then, without further defense objection, the prosecution asked whether the victim had displayed any of these behaviors; the witness answered affirmatively and listed six such behaviors, two of which she had originally mentioned before the defense objection and four of which she had described only after that objection was overruled.

[1–3] Generally, "an objection to a question must be lodged before the answer is given." *Allgire v. State* (1991), Ind., 575 N.E.2d 600, 606. However, where, as here, the witness's answer takes the form of a lengthy narration (in this case amounting to at least a full page of text in the trial record), and the objection is made after only a small portion of that answer has been given (here, after mention of only three out of ten characteristics), we find the objection sufficient to preserve the claim of error as to the witness's subsequent testimony. We likewise observe that defense counsel cannot be defaulted for failing to repeat his Rule 702(b) objection after it had once been made, argued, and overruled. *C.f. Carroll v. State* (1975), 263 Ind., 696, 700, 338 N.E.2d 264, 268 (discussing general rule that once an objection is tendered as to a particular class of evidence, it need not be repeated).

[4] Because expert scientific testimony is permitted "only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable," Ind.Evidence Rule 702(b), and because no foundational showing of reliability was made here, it was error to permit further testimony of this nature following the objection, particularly in light of the questionable reliability of child sexual abuse syndrome evidence for purposes of proving abuse. *See Steward*, 652 N.E.2d at 492–93, 498–99.

[5] Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party. Ind.Trial Rule 61; *Hardin v. State* (1993), Ind., 611 N.E.2d 123, 131. In reviewing errors in the application of state evidentiary or procedural law, as distinguished from federal constitutional errors,

**1142**

state appellate courts must apply their own harmless error rules. *Hardin,* 611 N.E.2d at 131. To determine whether error in the introduction of evidence warrants reversal, reviewing courts in Indiana are generally required to assess the probable impact of the evidence upon the jury, *id.* at 132, but various formulations have articulated the evaluation standard to be employed. *See, e.g., Jaske v. State* (1989), Ind., 539 N.E.2d 14, 22 (whether there exists a "substantial likelihood that the questioned evidence contributed to the conviction"); *Mulligan v. State* (1986), 487 N.E.2d 1309, 1313 (whether erroneous evidence "is minor and unlikely to weigh appreciably against the defendant"); *Williams v. State* (1981), Ind., 426 N.E.2d 662, 671 (whether the resulting prejudice is "so slight that we can justly say that it did not affect the jury verdict"); *Miller v. State* (1982), Ind., 436 N.E.2d 1113, 1114 ("whether the error itself had substantial influence").

[6] Despite variety in the language of our decisions, the undergirding concept remains consistent: an error will be found harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.

[7] In the present case, the victim was ten years old at the time of trial. She testified regarding acts of anal intercourse, digital-vaginal penetration, and oral sex performed upon her by the defendant approximately three years earlier. The victim's younger brother testified, describing his observation of one of these offenses. Physical corroboration was presented by a treating pediatrician and by the victim's grandmother, who, while bathing the victim, noticed redness and irritation in her genital area and heard her complain about a "sore bottom."

Considering this independent evidence of guilt, we are satisfied that the probable impact of the erroneously admitted testimony was sufficiently minor, in light of all of the evidence, that it did not affect the defendant's substantial rights.

Having granted transfer only for the purpose of addressing the Evidence Rule 702(b) issue in light of our decision in *Steward,* we summarily affirm the decision of the Court of Appeals in all other respects. Ind.Appellate Rule 11(b)(3).

SHEPARD, C.J., and DeBRULER and SELBY, JJ., concur.

SULLIVAN, J., concurs in result.