**Joseph RICH, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0608–CR–411.**

Court of Appeals of Indiana.

April 26, 2007.

meanor.[1] He claims the court should have suppressed the testimony of the arresting officer. We reverse.

## FACTS AND PROCEDURAL HISTORY

On May 8, 2006, Marion County Sheriff's Deputy Jeremy Gray was dispatched to Beechway Drive near 10th Street, where an off-duty detective, Wendall Daniel, had stopped an individual at the side of the road. When Deputy Gray arrived, he saw Detective Daniel and Rich. Rich had poor balance, an odor of alcohol on his breath, blood-shot and watery eyes, and slurred speech. When Deputy Gray asked Rich if he had been drinking, Rich reported that he had, but his last drink had been more than one hour earlier. Deputy Gray arrested Rich for public intoxication.

After Deputy Gray had begun testifying at Rich's trial, Rich moved to suppress his testimony on the ground Detective Daniel had no reasonable suspicion to stop Rich. The court denied the motion as untimely, because Deputy Gray had already begun to testify. After hearing additional evidence, the court found Rich guilty as charged.

## DISCUSSION AND DECISION

William F. Thoms, Jr., Thoms & Thoms, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Joseph Rich appeals his conviction of public intoxication as a Class B misde-

Rich challenges the trial court's decision to permit Deputy Gray to testify regarding Rich's condition. We review the trial court's admission of evidence for an abuse of discretion. *Carpenter v. State*, 786 N.E.2d 696, 702 (Ind.2003). "An abuse of discretion in this context occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law." *Id.* at 703.

1. Ind.Code § 7.1–5–1–3.

### 1. *Timeliness*

■ After Deputy Gray began testifying, Rich moved to suppress further testimony. The ground for his objection was that Detective Daniel's initial stop of Rich had been without reasonable suspicion Rich was engaged in criminal activity. Therefore, Rich asserted, the Fourth Amendment required suppression of all evidence collected, including Deputy Gray's testimony regarding Rich's condition.

The trial court held Rich waived his suppression argument by failing to present it before Deputy Gray testified. We disagree.

■ To assert error in the admission of evidence, a party must have made "a timely objection . . . , stating the specific ground of objection." Ind. Evid. Rule 103(a)(1). An objection is generally timely if it is made "before the answer is given." *Fleener v. State*, 656 N.E.2d 1140, 1141 (Ind.1995). Rich objected before Deputy Gray testified about the elements of the crime charged. Therefore, Rich objected prior to the admission of the evidence he wished to suppress.

The State has not cited, nor did our independent research uncover, precedent to the effect a motion to suppress is untimely just because a witness has begun testifying. *Cf. id.* (where witness was making a lengthy narration and objection came after "only a small portion of that answer has been given," the objection was "sufficient to preserve the claim of error as to the witness's subsequent testimony").

### 2. *Validity of Stop*

■ The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. U.S. Const. Amend. IV. The Fourteenth Amendment extended to state governments the Fourth Amendment's requirements for constitutionally valid searches and seizures. *Figert v. State*, 686 N.E.2d 827, 830 (Ind.1997). When a defendant challenges whether evidence was gathered properly under the Constitution, the State bears the burden of proving the evidence was admissible. *See Edwards v. State*, 759 N.E.2d 626, 630 (Ind.2001) (discussing admissibility under the Fourth Amendment of evidence gathered in warrantless search).

■ A police officer may stop a person to investigate possible criminal behavior without the probable cause required for a search warrant "if the officer has a reasonable and articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *Wells v. State*, 772 N.E.2d 487, 489 (Ind.Ct.App. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The "reasonable suspicion" requirement for a *Terry* stop is satisfied when

> the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. Reasonable suspicion entails something more than an inchoate and unparticularized suspicion or hunch, but considerably something less than proof of wrongdoing by a preponderance of the evidence.

*Id.* at 489–90 (quoting *Crabtree v. State*, 762 N.E.2d 241, 246 (Ind.Ct.App.2002)). Reasonable suspicion is determined under the totality of the circumstances. *Lampkins v. State*, 682 N.E.2d 1268, 1271 (Ind. 1997), *modified on other grounds on reh'g* 685 N.E.2d 698 (Ind.1997). If the facts known by the police at the time of the investigatory stop are such that a person of reasonable caution would believe the action taken was appropriate, the com-

mand of the Fourth Amendment is satisfied. *Id.*

Based on the evidence the State presented in response to Rich's motion to suppress, we have no choice but to suppress the remainder of Deputy Gray's testimony. Evidently, the State did not request the presence of Detective Daniel at Rich's trial, and Detective Daniel was the only person who could explain the facts and circumstances that led to his stop of Rich. Without his testimony, we have no basis for holding an ordinarily prudent person would have believed criminal activity was afoot.[2] Therefore, we must reverse.

## CONCLUSION

The trial court erred when it determined Rich's challenge to Deputy Gray's testimony was untimely. Because the State failed to demonstrate Detective Daniel had reasonable suspicion to justify his stop of Rich, we must suppress Deputy Gray's testimony regarding Rich's condition. Therefore, we reverse.

Reversed.

MATHIAS, J., and NAJAM, J., concur.

---

**2.** The State asserts Rich's own testimony demonstrated Detective Daniel had a reasonable suspicion criminal activity was afoot when he stopped Rich. Rich testified a white Blazer swung around a corner and nearly hit him as he was crossing the street, and that in response thereto he threw his hands up in the air as if to say "what the heck, you know, watch where your [sic] going." (Tr. at 17.) We decline the State's invitation to hold a pedestrian's frustration with a driver's failure to yield the right of way, without more, provides reasonable suspicion the pedestrian was committing a crime.

Neither will we follow the State's suggestion that we infer, from Rich's demeanor when Deputy Gray arrived, what gave Detective Daniel reasonable suspicion to stop Rich. Even if we were willing to so infer, we find it unlikely Detective Daniel, from his passing car, could have seen Rich's eyes, smelled his breath, or heard his speech; therefore, the only physical demeanor evidence remaining was that Rich had "poor balance." (Id. at 8.) Without knowing how poor his balance was or what the other circumstances of Detective Daniel nearly hitting Rich were, we will not infer Detective Daniel had reasonable suspicion Rich was committing a crime.